**Claybon J. EDWARDS et al., Plaintiffs-Appellants,**

**v.**

**David T. SAMMONS et al., Defendants-Appellees.**

**No. 30061.**

United States Court of Appeals, Fifth Circuit.

Feb. 2, 1971.

Rehearing Denied March 1, 1971.

Thomas M. Jackson, Macon, Ga., for plaintiffs-appellants.

Charles R. Adams, Jr., Fort Valley, Ga., for defendants-appellees.

Before BELL, DYER, and RONEY, Circuit Judges.

BELL, Circuit Judge:

The sole issue in this appeal is whether the district court erred in applying the doctrine of abstention in a voting rights case. For reasons hereinafter set forth, we reverse and remand for a decision on the merits.

During the week prior to the April 1, 1970 general election for mayor and council in the City of Fort Valley, Geor-

gia, the city clerk mailed notices to 192 electors advising that pursuant to the provisions of § 5–1 of the city charter,[1] they were being purged from the voters list for failure to pay city ad valorem taxes. Of the 192 electors purged, 150 were Negro citizens.

Prior to the election a class action was instituted on behalf of the purged Negro electors in the Superior Court of Peach County seeking to have the charter provision declared unconstitutional as being in conflict with the Georgia Municipal Election Code, Title 34A, Georgia Code Annotated. On the night before the election, a temporary restraining order was entered ordering the defendant city officials to allow the 192 purged electors to vote on a special machine set up for that purpose. As a result of this order, 34 votes were cast on the special machine—31 for a Negro candidate for city council and 3 for his white opponent.

On April 15, 1970 the Superior Court of Peach County entered an order upholding the provisions of the city charter under which the plaintiffs were purged. As a result the Negro candidate, Edwards, one of the appellants here, lost his race for city council by five votes.

Two days later, Edwards, and six of the purged electors filed suit in the federal district court against the appropriate city officials. Jurisdiction was premised on 42 U.S.C.A. § 1983 and 28 U.S.C.A. § 1343(3).

Their complaint alleged first, that the city charter provision was in conflict with the Georgia Municipal Election Code. In this regard the plaintiffs urged that § 34A–515[2] of the Code out-

---

1. "Every person who shall have attained the age of 18 years and who is a citizen of the United States, and who shall have resided in the county of Peach for six months, and in the City of Fort Valley for six months next preceding the date of the election, and who shall have otherwise qualified to vote for members of the General Assembly of the State of Georgia, and who have registered with the clerk of the city in the manner prescribed by law, shall be qualified to vote (in) any election held by the city, provided * * * that the said person shall have paid all taxes legally imposed by the City of Fort Valley."

2. Purging of electors' list.— (a) The registrar in municipalities maintaining their own registration system shall purge the list of electors as follows:
 (i) At least every two years the registrar shall examine the list of electors

lines procedures for purging voters lists which they maintain are exclusive. The exclusivity argument is based on § 34A–102[3] of the Code which provides that the Code shall take precedence over city charter provisions which are in conflict. In this connection, defendants maintain that § 34A–103(g) of the Code defines an elector in such a manner as to save the city charter provision in question from conflict with § 34A–102 of the Code.[4]

Secondly, plaintiffs alleged that the charter provision purging voters because of the failure to pay city ad valorem taxes was invalid in that it denied them rights secured by the equal protection clause of the Fourteenth Amendment.

A hearing was conducted on defendants' motion to dismiss on May 1, 1970. Thereafter an order was entered by the district court dismissing the action on the basis of the abstention doctrine and this appeal followed.[5]

■ The doctrine of abstention as fashioned in Railroad Commission of Texas v. Pullman, 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971, grew out of a desire to avoid federal constitutional questions where the case at hand could be decided by an adjudication in the state courts. It has generally been held proper where the constitutional issue might be mooted or presented in a different posture by a state court determination, Spector Motor Service v. McLaughlin, 1944, 323 U.S.

---

and remove therefrom any electors that have not voted in at least one general or special election or primary in the preceding three years or have not specifically requested a continuation of their registration.

(ii) At least 60 days before any general election obtain from the clerk of the superior court of the county a list of persons residing in the county who appear to be disqualified from voting by reason of having been convicted of a crime since the last general election, the penalty of which is disfranchisement unless such person has been pardoned and the right of suffrage restored to him. Any of these persons on the municipal electors' list shall be removed.

(iii) At least 60 days before any general election obtain from the ordinary of the county a list of all persons residing in the county who appear to be disqualified from voting by reason of an adjudication of idiocy or insanity since the last general election. Any of these persons on the municipal electors' list shall be removed.

(iv) At least 60 days before any general election obtain from the local registrar of vital statistics of each county a list of those persons who have died since the last general election. Any of these persons listed on the municipal electors' list shall be removed.

(b) Voters disqualified by reason of (a) (1) above shall be given notice by first class mail within 10 days after removal of their name and shall be given 20 days from removal date to request a continuance of their registration. The registrar shall remove those who do not so apply within the time allotted.

3. Application of Code.—This Code shall apply to any general or special election in every municipal corporation of this State to fill any municipal office, and to any general or special municipal primary, if any, to nominate candidates for any such office, to any election to submit a question to the people, and to any other municipal election or primary for any other purpose whatsoever. Except as specifically provided in this Code, its provision shall take precedence over municipal charter provisions which are in conflict herewith.

4. Definitions.—The following words, when used in this Code, shall have the following meanings, unless otherwise clearly apparent from the context:

(g) The word "elector" shall mean any person who shall possess all of the qualifications for voting now or hereafter prescribed by the laws of this State including applicable charter provisions and who shall have registered in accordance with the provisions of this Code;

5. At the hearing the district court advised counsel for plaintiffs to protect his state appeal. Counsel, however, chose to pursue his federal supplemental remedy under 42 U.S.C.A. § 1983, see Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 2d 492, and did not appeal the ruling of the state Superior Court. The risk inherent in this choice is that abstention might be proper on the part of the district court with the result of an attendant delay.

101, 65 S.Ct. 152, 89 L.Ed. 101; Chicago v. Fieldcrest Dairies, Inc., 1941, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355; to avoid disruption of a state administrative process, Burford v. Sun Oil Co., 1942, 319 U.S. 315, 63 S.Ct. 1098, 87 L. Ed. 1424, or where needless friction in federal-state relationships might be otherwise avoided. Louisiana Power and Light Co. v. City of Thibodaux, 1959, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058.

■ Deference to state court adjudication should be employed only where the issue of state law is uncertain, Harrison v. NAACP, 1959, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152, and not where it is clear that no state construction could moot the federal constitutional issue. Baggett v. Bullitt, 1964, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377. Another rule of some pertinence here is contained in what the Supreme Court called the guide to decision in Zwickler v. Koota, 1967, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444, a quote from United States v. Livingston, D. S.C., 1959, 179 F.Supp. 9, 12–13, aff'd Livingston v. United States, 1960, 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719:

"Regard for the interest and sovereignty of the state and reluctance needlessly to adjudicate constitutional issues may require a federal District Court to abstain from adjudication if the parties may avail themselves of an appropriate procedure to obtain state interpretation of state laws requiring construction. Harrison v. N.A.A.C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152. The decision in Harrison, however, is not a broad encyclical commanding automatic remission to the state courts of all federal questions arising in the application of state statutes. N.A.A.C.P. v. Bennett, 360 U.S. 471, 79 S.Ct. 1192, 3 L.Ed.2d 1375. Though never interpreted by a state court, if a state statute is not fairly subject to an interpretation which will avoid or modify the federal

constitutional question, it is the duty of the federal court to decide the federal question when presented to it. Any other course would impose expense and long delay upon the litigants without hope of its bearing fruit." 389 U.S. at 250–251, 88 S.Ct. at 397.

It may appear, conversely, that where the issue of state law could clearly moot the constitutional question by construction of the state statutes involved without resort to any federal constitutional construction, applying the doctrine of abstention would be the proper course of action. This, however, is an over simplification of the doctrine.

■ These approaches must also take into consideration the nature of the controversy and the particular right sought to be enforced. Cf. Harman v. Forssenius, 1965, 380 U.S. 528, 537, 85 S.Ct. 1177, 14 L.Ed.2d 50 (voting rights); Griffin v. County School Board of Prince Edward County, 1964, 377 U.S. 218, 229, 84 S.Ct. 1226, 12 L.Ed.2d 256 (school desegregation); Baggett v. Bullitt, 1964, 377 U.S. 360, 375–380, 84 S. Ct. 1316, 12 L.Ed.2d 377 (First Amendment rights). In each of these cases the court referred to the nature of the rights involved as a reason to uphold the refusal of the District Court to abstain. *Griffin* referred to the need for prompt resolution of school desegregation questions. Baggett v. Bullitt focused on the need to avoid delay where the operation of the statute may inhibit First Amendment freedoms.

But Harman v. Forssenius points up the error in abstaining here. The controversy there involved the freighting of the right to vote in federal elections in Virginia with the necessity of paying a poll tax or, in the alternative, filing a certificate of residence, all in violation of the Twenty Fourth Amendment. The district court refused the request of the state that it abstain pending decision of state questions in the state courts. As an additional reason for finding no

abuse of discretion in the refusal to abstain, the court stated:

> "In addition to the clarity of the Virginia statutes, support for the District Court's refusal to stay the proceedings is found in the nature of the constitutional deprivation alleged and the probable consequences of abstaining. * * * As this Court has stressed on numerous occasions, '[t]he right to vote freely for the candidate of one's choice is of the essence of a democratic society and any restrictions on that right strike at the heart of representative government.' Reynolds v. Sims, 377 U.S. 533, 555, 84 S. Ct. 1362, 12 L.Ed.2d 506, 523. The right is fundamental 'because preservative of all rights.' Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220, 226. In appraising the motion to stay proceedings, the District Court was thus faced with a claimed impairment of the fundamental civil rights of a broad class of citizens. The motion was heard about two months prior to the deadline for meeting the statutory requirements and just eight months before the 1964 general elections. Given the importance and immediacy of the problem, and the delay inherent in referring questions of state law to state tribunals, it is evident that the District Court did not abuse its discretion in refusing to abstain.* * * " 380 U.S. at 537, 85 S.Ct. at 1183.

Here the election has been held and the opponent of plaintiff Edwards is holding the office subject to a judicial ruling as to the validity of the purging process under the city charter. We think the situation here is no less than that presented in *Harman* from the vantage of harm to the plaintiff electors from delay.

 Having these principles and facts in mind, we conclude that the district court erred in abstaining. It is not altogether clear that the federal constitutional question would be avoided by a construction of the charter and statutes in the state court. See rule of Zwickler v. Koota, supra. Indeed, the state trial court ruled for defendants on the state question. This means that it is arguably clear that piecemeal adjudication and delay may occur. We take Harman v. Forssenius to mean that the delay which follows from abstention is not to be countenanced in cases involving such a strong national interest as the right to vote. On the importance of the right, in addition to the cases cited in Harman v. Forssenius, supra, see Harper v. Virginia State Board of Elections, 1966, 383 U.S. 633, 86 S.Ct. 1079, 16 L.Ed.2d 169; and the Voting Rights Act of 1965, 42 U.S.C.A. § 1971, et seq.

This ruling, based as it is on the imperative of the right to vote, in no way conflicts with the use of abstention in cases involving economic interests and which are otherwise proper for abstention. Cf. e. g. Reetz v. Bozanich, 1970, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68; Hill v. City of El Paso, 5 Cir., 1971, 437 F.2d 352.

Reversed and remanded for further proceedings not inconsistent herewith.