Brunson D. MOORE, Plaintiff-Appellant,

v.

EL PASO COUNTY, TEXAS, T. Udell Moore, etc., et al., Defendants-Appellees.

No. 80–1300.

United States Court of Appeals, Fifth Circuit.[*]
Unit A

Nov. 5, 1981.

Rehearing Denied Dec. 28, 1981.

* Former Fifth Circuit case, Section 9(1) of Public Law 96 452—October 14, 1980.

Christie, Berry & Dunbar, Edward Dunbar, El Paso, Tex., for plaintiff-appellant.

George Rodriguez, Michael P. Davis, Christine Pacheco, El Paso, Tex., for defendants-appellees.

Before BROWN, WISDOM and RANDALL, Circuit Judges.

RANDALL, Circuit Judge:

The plaintiff, Brunson D. Moore, appeals from the dismissal of his § 1983 suit by the district court. Because we think that Moore's suit is barred by the applicable statute of limitations, we affirm the judgment of the district court.

*The Facts*

Moore is a former Justice of the Peace in El Paso County, Texas. On Nov. 7, 1972, he was reelected for a four year term of office as Justice of the Peace for Precinct One, Place 1 of El Paso County, his term to commence January 1, 1973. However, on December 27, 1972, the Commissioners Court of El Paso County voted to abolish the eight existing Justice of the Peace and Constable Precincts effective December 31, 1972, and replace them with six new precincts, effective January 1, 1973. The Commissioners Court interpreted the statute giving them authority to redistrict to mean that there would be vacancies for Constable and Justice of the Peace in all six new districts as of January 1, 1973. They subsequently made appointments to fill the va-

cancies; Judge Moore was not appointed to a vacancy.[1]

On December 31, 1974, Judge Moore brought two actions against the El Paso County Commissioners Court and its members. One of these actions was brought in the 120th District Court of El Paso County, Texas. The other was filed in the United States District Court for the Western District of Texas.[2] Except for a statement citing the basis of federal jurisdiction in the federal action, the pleadings are identical in content. Moore claimed that provisions of the Texas constitution and statutory law relied on by the Commissioners Court in their redistricting and appointments violated the Fourteenth Amendment both facially and as applied by the Commissioners Court.

Moore took no further steps in his state court action but went forward with his suit in federal district court. However, on February 18, 1975, the Supreme Court decided *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975), dealing with the same Texas constitutional and statutory provisions attacked in the present case. The Court held that Texas law was ambiguous and directed the court to abstain from passing on the federal constitutional issues under the doctrine of *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Because of the niceties of Texas constitutional law, discussed more fully *infra*, the Supreme Court directed that the plaintiffs' action in federal court be dismissed without prejudice, thus enabling the plaintiffs to return to federal court once the state law had been clarified.

In the light of *Harris County Commissioners Court v. Moore*, the El Paso County Commissioners Court moved for dismissal on the basis of abstention. The district court granted the motion and the case was dismissed without prejudice on March 25, 1975.

Since Moore already had a state court action pending, he used it to litigate his state law claims as required by *Pullman.* Summary judgment was granted for the defendant Commissioners in the trial court, and the decision was affirmed by the El Paso Court of Civil Appeals. 567 S.W.2d 15 (Tex.Civ.App.—El Paso 1978, writ ref. n. r. e.). The Texas Supreme Court refused the writ of error on October 11, 1978, and Moore filed the present action in federal court on December 11, 1978. Defendants moved for summary judgment on the grounds that the complaint was barred by the statute of limitations and res judicata. The district court granted defendants' motion on February 15, 1980. Moore appealed to this court.

The parties raised two basic issues on appeal: (1) was Moore's second federal suit barred by the statute of limitations, and (2) if not, did Moore freely and without reservation litigate his federal claims in the state courts so that any subsequent action would be barred by the doctrine of res judicata? We do not reach the second issue because of our determination of the first.

1. It appears that the action of the Commissioners Court came as no surprise to Judge Moore. According to the record, five months previously, on July 24, 1972, the Commissioners Court had considered redistricting and had voted 3 2 in favor, the 2-2 tie among the four Commissioners being broken by Judge T. Udell Moore, the County Judge (not to be confused with the appellant, Judge Brunson Moore). This redistricting was to take effect on August 1, 1972, and would have replaced the eight Justice of the Peace and Constable Districts with five. On July 27, Judge Brunson Moore, joined by four other Justices of the Peace, sought and obtained a Temporary Restraining Order against the redistricting. This Order expired on August 14, 1972, and since no further action was taken, the case was dismissed on November 4, 1972. A month later, on December 2, 1972, the Commissioners Court again took up the matter of redistricting by holding hearings which ultimately led up to its December 27 resolution.

2. The record is ambiguous as to which action was filed first. Counsel for Appellant Moore stated at oral argument that the actions were filed "literally within hours of each other" and that he believed the federal action had been filed first. He explained that the duplicate filing was to prevent statute of limitations problems should one or the other of the actions be dismissed for any reason.

*Statute of Limitations*

▮ In the traditional *Pullman* abstention case, a federal court will retain jurisdiction while the parties litigate the state law issues in the state courts. *Harris County Commissioners Court v. Moore, supra,* 420 U.S. at 88 n.4, 95 S.Ct. at 878 n.14; *Zwickler v. Koota,* 389 U.S. 241, 244 n.14, 88 S.Ct. 391, 393, 19 L.Ed.2d 444 (1967). However, the Texas courts have made clear that they cannot entertain a declaratory judgment proceeding while the federal court retains jurisdiction in the same controversy; the federal court's continuing jurisdiction to enter a final judgment has been interpreted by the Texas courts as precluding the state court from entering a final judgment itself. This renders any state court decision in such circumstances as advisory, and in violation of the Texas constitution's prohibition against advisory opinions. *United Services Life Ins. Co. v. Delaney,* 396 S.W.2d 855 (Tex.1965); *see Romero v. Coldwell,* 455 F.2d 1163 (5th Cir. 1972); *Barrett v. Atlantic Richfield Co.,* 444 F.2d 38 (5th Cir. 1971).

In order to ensure the sequence of events contemplated by the abstention doctrine, it is thus necessary in such cases to dismiss the federal action without prejudice. *Moore, supra; Abell v. Frank,* 625 F.2d 653 (5th Cir. 1980); *Ibarra v. Bexar County Hospital Dist.,* 624 F.2d 44 (5th Cir. 1980); *Romero v. Coldwell, supra; Barrett v. Atlantic Richfield Co., supra.* However, this procedure raises an interesting problem. The second federal action was filed on December 11, 1978, almost six years after the events of which Moore complains. Defendants argue that since the federal court did not retain jurisdiction, but required Moore to file a new action subsequent to the state court proceedings, the second federal action is barred by the statute of limitations. Moore argues in reply that the statute of limitations on the federal action should be tolled pending the outcome of the state litigation required by *Pullman.* In order to decide the issue we must look to the applicable law regarding the statute of limitations.

Moore brought the present action under 42 U.S.C. § 1983 and the Fourteenth Amendment. Where, as in this case, Congress has not established a statute of limitations or a body of tolling rules for a federally created cause of action, federal courts have "borrowed" the state law of limitations governing an analogous cause of action. *Board of Regents of the University of the State of New York v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). With respect to § 1983 actions, 42 U.S.C. § 1988 (1976) instructs the federal courts to refer to state statutes when federal law provides no rule of decision. *Robertson v. Wegmann,* 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978).

*Robertson* and *Johnson* direct us to ascertain the most appropriate and analogous Texas statute of limitations and tolling rules and to apply them unless we find them inconsistent with the federal Constitution or laws or with some important federal policy underlying the Constitution or laws. *See Rubin v. O'Koren,* 644 F.2d 1023 (5th Cir. 1981).

▮ This circuit has recently held on the facts of a particular § 1983 action that the applicable Texas statute of limitations is Tex.Rev.Civ.Stat.Ann. Title 91, article 5526 (Vernon), which permits a period of two years in which suit is to be brought.[3] *Braden v. Texas A&M University System,* 636 F.2d 90 (5th Cir. 1981). Moore's pleadings allege that he was denied a property interest (his position and its emoluments) without due process of law. Therefore, as in *Braden,* we invoke article 5526(1), appli-

---

**3.** Tex.Rev.Civ.Stat.Ann. Title 91, article 5526 (Vernon) provides in pertinent part:

There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

1. Actions of trespass for injury done to the estate or the property of another.

2. Actions for detaining the personal property of another, and for converting such property to one's own use.

. . .

6. Action for injury done to the person of another.

cable to actions for trespass to property, and article 5526(2), applicable to actions for detaining property and for conversion, as the appropriate statutes of limitations in Moore's § 1983 action. 636 F.2d at 93. Then absent any tolling period, the statute of limitations for Moore's § 1983 action should have run on or before January 1, 1975.[4]

Moore's second federal suit was filed on December 11, 1978, two months after the Texas Supreme Court denied a writ of error on Moore's state court action and almost six years after the cause of action had accrued. Moore admits that ordinarily his second suit would be barred by the statute of limitations, but in the light of the special circumstances of this case he asks us to fashion a tolling rule for *Pullman* situations in the Texas courts.

Two different tolling rules suggest themselves—one derived from Texas state law and a second proposed by Moore. Under each of the rules the statute would be tolled until the date on which Moore's state litiga-tion was concluded. However, each rule gives a different starting point for when the tolling would begin.

As a general rule we would look initially to the law of the State of Texas for a tolling exception which would benefit Moore. *Board of Regents of the University of the State of New York v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980). Texas does have a tolling rule which might conceivably be appropriate to a *Pullman-England* situation, where a federal plaintiff is prevented from raising particular claims in federal court by the pendency of state proceedings.[5] Under this rule, the statute would be tolled from the time the state proceedings required by *Pullman* were commenced until their conclusion.

Moore proposes a different tolling exception. Under his rule the federal court would toll the statute from the time that the first federal action was dismissed until the time that the state proceedings were completed, thus avoiding the possibility that

---

4. Although the statute of limitations and tolling provisions are governed by Texas law, when the cause of action accrues in a § 1983 suit is a question of federal law. *Rubin v. O'Koren*, 644 F.2d 1023 (5th Cir. 1981); *Lavellee v. Listi*, 611 F.2d 1129 (5th Cir. 1980); *Donaldson v. O'Connor* 493 F.2d 507 (5th Cir. 1974), *vacated and remanded on other grounds*, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). Moore's § 1983 action could have accrued on December 27, 1972, when the Commissioners Court voted to redistrict, or on January 1, 1973, when Moore was relieved of his position as Justice of Peace. Moore filed his first district court action on December 31, 1974. If the earlier date applied, the action would have been filed more than two years from the time of accrual, and defendants have argued for this position. Defendants, however, did not plead a statute of limitations defense either to Moore's first federal action or to the state action filed simultaneously with it. Indeed, they have raised the point concerning the original federal action for the first time on this appeal to the second federal action. It is much too late for such objections—defendants have waived this affirmative defense with respect to the first action. Fed.R.Civ.P. 8(c); *Moore v. Tangipahoa Parish Sch. Bd.*, 594 F.2d 489 (5th Cir. 1979). Since the choice of December 27 or January 1 as the time of accrual makes no difference to our subsequent holding as regards the second federal suit, we do not decide the question. It is sufficient for us to say only that the cause of action had accrued on or before January 1, 1973.

5. The courts of Texas have held that

[a]s a general rule, where a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right. *Cavitt v. Amsler*, 242 S.W. 246, 249 (Tex.Civ. App.—Austin 1922, writ dism'd).

*Walker v. Hanes*, 570 S.W.2d 534, 540 (Tex.Civ. App.—Corpus Christi 1978, writ ref. n. r. e.); *see First Natl. Bank v. Nu-Way Transports, Inc.*, 585 S.W.2d 813 (Tex.Civ.App.—Fort Worth 1979, no writ); *Fields v. Austin*, 30 S.W. 386 (Tex.Civ.App.1895, writ den. err. ref.). This rule has been applied in cases where a plaintiff's rights are not determined until a pending litigation is completed. *See, e. g., McDonald v. Ayres*, 269 S.W. 1105 (Tex.Ct.Civ. App.—Galveston 1925, no writ) (statute did not run on plaintiff's suit for interest on note until it had been determined in another proceeding that he owned a one-half interest in note). This state of affairs is analogous to the *Pullman* situation, where the plaintiff cannot be sure that the state law in question violates his federal constitutional rights until a state court has construed the law.

The analogy to the *Pullman* situation is not perfect since the plaintiff is not completely prevented from litigating his federal claims pending the outcome of the state law issues. He may of course litigate both together. However, this forfeits his right to a federal forum and defeats the purposes behind *Pullman* absten-

the statute might run between the time of the dismissal and the institution of the state suit.[6]

Although a tolling rule in *Pullman* situations like this one has obvious merits,[7] neither the state rule nor Moore's proposed rule would help Moore on the facts of this case. Even were we to choose one of these rules, Moore's second federal action would be barred. Moore's state suit and his first federal suit were filed with at most one day to spare. Moore's state litigation was concluded on October 11, 1978, when the Texas Supreme Court denied his application for a writ of error.[8] Moore did not file his second federal suit until December 11, 1978. Thus under the Texas tolling rule, Moore's second federal suit was at least two months tardy. Ironically, under Moore's own proposed rule, his suit would be even later. The first federal suit was dismissed without prejudice on March 25, 1975, approximately three months after the statute had run. Thus under Moore's tolling rule his second suit would be a total of five months too late.

The possibility exists that the federal courts could create a tolling rule designed specifically to deal with the unique problems of *Pullman* abstention in the context of Texas cases. But Moore has not suggested any other rule for our consideration and we decline to speculate on what, if any, the proper rule would be. Of course any deviation from the Texas tolling rule would have to be justified under *Tomanio, Johnson v.*

*Railway Express Agency* and *Robertson v. Wegmann* by showing that the Texas rule was inconsistent with the federal Constitution or laws or with a federal policy underlying them.

Because Moore's second suit is barred by the statute of limitations, the judgment of the district court dismissing Moore's second suit is affirmed.

AFFIRMED.

## ON PETITION FOR REHEARING

PER CURIAM:

IT IS ORDERED that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby denied. Appellant argues, for the first time in his petition for rehearing, that this court should adopt the functional view that when the initial federal action .was filed on a timely basis, insofar as the Texas statute of limitations is concerned, the federal court need not thereafter concern itself with the statute of limitations. We do not consider arguments raised for the first time in a petition for rehearing.

---

tion, for abstention is meant to be only a temporary and not a permanent abdication of federal jurisdiction. The tolling rule may thus be the most appropriate and analogous one.

6. Because in this case Moore's state and first federal suit were filed simultaneously, the period provided by the Texas common law tolling period would actually be longer; but in most situations where plaintiff's counsel is not so prescient, the state action would usually be filed subsequent to dismissal and so the state rule would offer less protection.

7. Such a rule would vindicate the important federal policies underlying both *Pullman* and *England v. Louisiana Board of State Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Under *England* the federal plaintiff has the right to have his federal claims eventually heard in the federal courts, his original forum of choice. But he must not litigate his claims in the state courts if he wishes to preserve that right. If a federal court relinquishes its jurisdiction in a *Pullman* situation in accordance with *Moore*, it is very possible, and indeed very likely, that the length of subse-

quent state law litigation will exceed the time remaining on the statute of limitations. This is especially so in actions alleging constitutional violations under 42 U.S.C. § 1983, for such suits brought in Texas will often have a statute of limitations of only two years. Absent a tolling rule, the federal plaintiff is then put to the unpleasant choice of either foregoing his right to a federal forum by litigating his federal claims in state court or hoping that the state litigation proves speedy and risking a complete forfeiture of his federal claims. The more complex the state issues, and the more successfully the defendants can engage in dilatory tactics, the more certain it is that the federal plaintiff will be robbed of the rights that *England* sought to preserve for him. Such a situation clearly does no justice to the policies which motivated the *Pullman* doctrine.

8. We have taken judicial notice of the exact date of the denial of the writ of error, as the information was not included in the record or in the briefs submitted by the parties.